UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.



| | |
|---|---|
| KAREN UNAKA,<br>　　　　Plaintiff,<br><br>vs.<br><br>SOUTH MIDDLESEX<br>OPPORTUNITY COUNCIL,<br>Bruce S. Hulme, President &<br>Relevant Parties,<br>　　　　Defendants. | NOTICE OF REMOVAL<br><br>05 - 30036 - MAP<br><br>FILING FEE PAID:<br>RECEIPT # 305841<br>AMOUNT $ 150.00<br>BY DPTY CLK MGh<br>DATE 2/3/05 |

Pursuant to 28 U.S.C. §§1441(a) and (b) and 1446, South Middlesex Opportunity Council, Inc. ("SMOC") and Bruce S. Hulme ("Hulme") hereby file their Notice of Removal of the above-captioned case to this Court from the Massachusetts Superior Court for Hampshire County. As grounds for the removal, SMOC states as follows:

1. This action was commenced in the Massachusetts Superior Court, Hampshire Division, as Civil Action No. 04-193. Copies of plaintiff's Summons and Complaint, setting forth the claims for relief upon which this action is based, were first served on Hulme, president of SMOC, on January 10, 2005[1].

2. Plaintiff has brought this action for alleged violations of civil rights and denial of her due process rights, *inter alia,* by persons acting under color of state law, in violation of 42 U.S.C., § 1983 and the United States Constitution. A copy of the summons and complaint served upon Hulme is annexed hereto as Exhibit A.

---

[1] It is unclear whether Mr. Hulme is a party to this lawsuit and whether service upon him is deemed service on the defendant corporation. Accordingly, in an overabundance of caution, while reserving its right to contest proper service, Mr. Hulme and SMOC have both filed an answer in the Superior Court and file this Notice of Removal.

{J:\CLIENTS\lit\192720\0104\F0294251.DOC;1}

COMMONWEALTH OF MASSACHUSETTS
HAMPSHIRE, SS.

Superior Court Dept.
Trial Court of the Commonwealth
Civil Action

No. 04 193

Karen Liniaka , Plaintiff (s)

v.

Bruce S Hulme, President
South Middlesex Opportunity Council
Kim Mcungo Murray, Program Coord
(Wright House for Women)
Amy [illegible], Regional Director
[illegible] House for Women), Defendant (s)

SUMMONS   A TRUE COPY ATTEST
[signature]
DEPUTY SHERIFF

To the above-named Defendant : Bruce S. Hulme,

You are hereby summoned and required to serve upon Karen Liniaka,
plaintiff attorney, whose address is P.O. Box 754 Hadley, MA 01035 ,
an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Northampton, either before service upon plaintiff attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esquire at Northampton, the
, in the year of our Lord two thousand
day of

[signature]
CLERK-MAGISTRATE

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. Circle type of action involved. Tort – Motor Vehicle Tort – Contract – Equitable relief.

| CIVIL ACTION COVER SHEET | 04 193 | Trial Court of Massachusetts Superior Court Department County: _____ |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Karen Unaka | South Middlesex Opportunity Council |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) |
| | |
| Board of Bar Overseers number: | |

### Origin code and track designation

Place an x in one box only:
- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| E17 | civil | (F) | (✓) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; Indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses .......... $..........
2. Total Doctor expenses .......... $..........
3. Total chiropractic expenses .......... $..........
4. Total physical therapy expenses .......... $..........
5. Total other expenses (describe) .......... $..........
   Subtotal $..........
B. Documented lost wages and compensation to date .......... $..........
C. Documented property damages to date .......... $..........
D. Reasonably anticipated future medical and hospital expenses .......... $..........
E. Reasonably anticipated lost wages .......... $..........
F. Other documented items of damages (describe) $..........
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
emotional distress, decline in health due to displacement by actions of South Middlesex Opportunity Councils Officers, sudden loss of housing, postponement of medical care & treatment, embarrassment, harassment $..........
TOTAL $..........

(stamp: HAMPSHIRE SUPERIOR CRT HARRY JEKANOWSKI, JR. CLERK 2004 AUG 13 P 4:__)

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $..........

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _K Unaka_ DATE: 08/13/04

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS

| | |
|---|---|
| HAMPSHIRE, ss. ) | SUPERIOR COURT |
| ) | NORTHAMPTON DIVISION |
| ) | DOCKET NO. 04 193 |
| ) | |
| ) | |
| KAREN UNAKA ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | |
| ) | |
| SOUTH MIDDLESEX OPPORTUNITY COUNCIL ) | |
| Bruce S. Hulme, President & Relevant Parties ) | |
| Defendants ) | |

1  The Plaintiff, KAREN UNAKA is an individual, and former resident of Wright House Easthampton, MA, Hampshire County

2  The Defendant, SOUTH MIDDLESEX OPPORTUNITY COUNCIL, Administrative Offices located at 300 Howard Street Framingham, MA, owner and operator of Wright Home for Women, Easthampton MA, Hampshire County

3  Defendant, RENA MANIGO-MURRAY, Program Coordinator, Wright House for Women

4  Defendant, AMY TOLLER, Director, Wright House for Women

5  Defendant, VICTORIA PETERSON, House Monitor/Resident, Wright House for Women

6  Defendant, RENEE ALBERT, Resident, Wright House for Women

All Other Relevant Authorized South Middlesex Opportunity Council Officers Involved in Actions in Violation of the Rights of Plaintiff, Ms. Karen Unaka in the Matter of August 9-14, 2001.

COMPLAINT AND JURY DEMAND
Overview

Beginning on or about July 27, 2004 until August 14, 2001 I, Karen Unaka, was a resident at the Wright Home for Women in Easthampton, MA, a transitional housing program owned and operated by South Middlesex Opportunity Council (SMOC). My stay there was necessitated by the loss of my long-term rental housing after sale by the owner and an acute medical condition, which needed *immediate* action. Upon my arrival, I made it clear to Program Coordinator, Ms. Manigo-Murray that I did not abuse alcohol or drugs, and asked that this be noted in my file—rather my circumstances necessitated a transitional living arrangement so that I could become re-employed and re-housed, while pursuing a plan of action for my health. All that I asked for was a clean, quiet, stable environment in which to do so. I was accepted into the residence with the understanding that my stay would be a maximum of nine months with a 100% rental subsidy. I was forcibly removed without due process of law, based on the false allegations of another resident who was a known alcoholic and substance abuser, allowed to act as "house monitor" by the Program Coordinator, Rena Manigo-Murray. Allegations were subsequently trumpeted by the Program Coordinator, without benefit of any

grievance procedure whatsoever, and with the support of a "witness" who was also a known substance abuser with a heroin addiction, under suspicion of continued alcohol use while in residence. Nor were either of these parties—the accuser and the "witness"—required to be present at the time that I was informed of the allegation by the Program Coordinator. I had an acute medical condition for which I needed an immediate operation and thought this a stable place to live and enough time allotted in which to address the problem. Further, I thought if I simply focused, and a set my own "program" goals for getting back to health, I would be left in peace by other residents, despite their addictions. Instead I found myself swept up in a maelstrom of false accusations by substance abusers, and was subsequently returned to the very situation I came to Wright House in search of a resolution for. With my ouster, I had to postpone my operation for many months, while addressing the immediacy of my housing dilemma. My health suffered as a result.

## Statement of Facts

1) On morning of Thursday, August 9, 2001, Program Coordinator at the Wright Home for Women, Rena Manigo-Murray called me into her office and accused me of "striking" her "house monitor," Victoria Peterson. This is my first hearing of this. I attempt to discuss the matter, but she has already made up her mind. I am told to find another place by five o'clock that day. Her response, at my request that the accuser be present and to my denial of this accusation, is to sit stony-faced and repeat, "Yeah, we've had some problems before."

2) The problem has been my questioning the required attendance at Alcoholics Anonymous meetings in-house if one is not an alcoholic, rarely even drinks, and the anonymity of such a meeting where residents are expected to bare a great deal to those with whom they also live, and my decision to read during one of the meetings, about which I'd been called in and "talked to" the following day. I was shouted at by Ms. Manigo-Murray at the mere request that a notation of "Not Applicable" be made, early on, next to the requirement that this meeting be attended.

3) Based upon this request, and some minor infraction of missed meetings, (due in part to attempts to retrieve some of my belonging to bring to the residence and taking care of the other business of getting settled without adequate transportation), was conflated into a presumption of guilt, by the Program Coordinator, of the more serious claim of violence by her house monitor, Victoria Peterson.

4) Calls were made to inform the Program Coordinator when I was stranded or unable to make a meeting on time. One of the missed meetings was simply an oversight due to the newness of the living situation, as well as the frequency of meetings.

5) The house monitor position is held by someone who is herself from the resident population chosen by Ms. Manigo-Murray--to my knowledge, an unpaid position—with ready access to the Program Coordinator's office where residents' confidential files are stored and is thereby allowed greater access to Ms. Manigo-Murray in her capacity as Program Coordinator of the Wright House, as well.

6) On the morning of August 9, 2001, upon my request that Ms. Peterson be required to come into the Program Coordinator's office, to seek fairness in the matter, she appeared in the doorway, and upon realizing it was not at Ms. Manigo-Murray's request said: "Oh I don't feel like being bothered," and was allowed to return to her room.

7) During my short, two-week stay at the Wright House, I was subjected to the "tyranny" and mean-spiritedness of several of the alcoholic residents, with no protection afforded me, as a non-alcoholic resident, by the Program Coordinator.

8) The "witness" Renee Albert was a known heroin addict at the residence, who was being questioned regarding her whereabouts (after purportedly attending AA meetings) by Peterson, *at the time of the alleged incident*. Although there was growing suspicion over several days' time about whether Ms. Albert was continuing to use drugs, it was revealed by the "assistant house monitor" that she could not be tested, as Wright House did not yet have their drug testing account in place with Baystate Labs. Her *entire account* of assault is fabricated.

9) Ms. Albert was a harasser by whom I had been accosted in the kitchen on more than one occasion, usually late at night when I'd gone down to the kitchen for or juice during a time when I thought the residence would be quiet. She frequently "stalked" the common areas and stayed up all hours of the night creating disturbances.

10) I spent most of the day of April 9, 2001, beginning shortly after meeting with Manigo-Murray until early afternoon, on a day when the temperature registered *105 degrees indoors*, with a debilitating medical condition that had me *seriously* anemic, weak, (so much so that it would have been foolhardy to attempt to "assault" anyone). In fact, my doctor had once told me I was so anemic I was in danger of slipping into coma. I was, consequently, more susceptible to heat prostration, while frantically calling about for another place to live on a moment's notice, and trying also to find out my rights in this matter.

11) Around 2:00 p.m., on August 9, 2001, Ms. Manigo-Murray's boss, Amy Toller, appeared inside Wright House. I introduced myself and asked whether we could talk. She agreed to, and immediately announced that she was five-year's in recovery. I told of my conversation with Ms. Manigo-Murray. She replied: "Oh Rena's not going to make you leave just like that if you don't have another place to live!" I breathed a sigh of relief, but only for about 20 minutes. Meanwhile Ms. Peterson is trumpeting her allegation about having been hit to Ms. Toller, while I am relaying the substance of my talk with Ms. Toller to Ms. Manigo-Murray, whose response is: "Okay, as long as we're on the same page. I don't want it to be thirty days." Moments later, she calls me in and saying "I've talked with Amy; you have until 5 p.m. tomorrow to find another place." Again without benefit of an in-house grievance procedure, or any attempt at a fair discussion with all parties present, I resume phone calls about a place.

12) On Friday, August 10, Ms. Toller calls for Ms. Manigo-Murray. I happen to answer her call, while using the phone for my search. I ask of her why her assurance that I would not be surreptitiously ejected without a place lined up to go was reneged upon. She replies, "That was before I knew there was physical violence."

13) All requests and any attempt at reasonableness and fairness are foreclosed upon. I call a lawyer. Via phone consultation, I explain what is happening, and it is suggested to me that since it is late (4:25 p.m on a Friday) with no time for an injunction, to inform the Police Department and explain to them that the Management is planning to forcibly remove me based on false allegations. The dispatcher takes my information and passes it along to the sergeant.

14) At about 4:45p.m, Ms. Manigo-Murray calls me into her office to introduce me to a woman by the name of (Mary Leoni) who is "…here to help me find another place." This is someone who is, to my understanding, hired to help residents procure long-term housing (not shelter stays), and assist with the employment search. This is my first meeting her in my two weeks there. After a half-hour talk, she concludes that I "don't need a program, just a job and my own place," which is what I had told Ms. Manigo-Murray from the outset--along with the stability required to immediately address an acute medical condition.

15) She now offered to "work something out for me" with Ms. Manigo-Murray. Meantime, a man by the name of "John" appeared from one of SMOC's other offices in Springfield. I was

summoned into Ms. Manigo-Murray's office and told this person is "here to take me to a shelter in Springfield," without any prior introduction or opportunity to speak with him myself. My first impression of him was one of hostility as he immediately gets on the telephone to the police, whom I have already notified of the situation, and accuses me of trespassing because I refuse to head off to a shelter with him, citing this was not in the agreement I signed and having done nothing wrong, I see no reason to rush off with him.

16) Two officers arrive around 6:00 p.m—one of whom is the sergeant that responded to my earlier call. I ask whether we can go on to the enclosed porch, and sit down to talk quietly, rather than standing around in the front yard. He agreed. I request that Ms. Manigo-Murray be present, as she is the one in charge of the program and required to be there on a daily basis, and was the only one I had heard trumpeting the allegation, thus far. Again, I asked that Victoria Peterson be present, to no avail. (*To date, I have not heard allegation, or read a signed statement of it anywhere from the supposed accuser(s)*). Also, for all the trumpeting of an alleged "assault" at the residence, complete with "witness," no police report of any kind was filed; nor even was a call placed to the Police Department on the eve of the alleged event

17) In the absence of access to a grievance procedure, I seek the chance to state my side in Ms. Manigo-Murray's presence, with what I hoped would be an outside and objective party. I requested also that we all be seated, (also pulling up a chair for Ms. Manigo-Murray), as I realized that with five persons—three of them SMOC's officers and only the one advocate in my behalf being myself, some intimidation tactics might be employed. The sergeant was able to elicit from Ms. Manigo-Murray, right away, during the meeting that there was indeed an in-house grievance procedure.

18) When I asked whether I might file at that time, I was told, "At the Springfield shelter." I inquired as to why I should be booted out without due process, and was told SMOC was providing me with a clean place to go "*just for the night.*" (Furthermore, I had been told by residents at Wright House who had stayed at this particular shelter that it was neither clean nor safe).

19) I again called the law office, and was told that if there was no warrant, I should remain at Wright House as previously instructed by counsel, I relayed the message that I was remaining there and informed them of my reason—that I already had a clean place here and had done nothing wrong-- whereupon the officer's departed.

20) After congregating in the living room for about twenty minutes, SMOC representatives departed also.

21) Without assistance on the part of the employment/housing coordinator, I found employment the following day (Saturday, August 11, 2001). The weekend is pretty much without incident, as is Monday night upon my return from my second day at work...

22) On the eve of Tuesday, August 14, I arrive home from work at about 7:15p.m. As I am preparing to eat, a man appears immediately from behind, with an order of trespass, asks my name and says he is "just doing his job." Ms. Manigo-Murray appears right after and says "They don't want you here." She proceeds to tell me to pack my things, while looking at her watch. She threatens to call the police. I am extremely fatigued from anemia and having had a health scare with the 113 degree heat-wave of the previous week, I do not want to relive the ordeal of Friday eve. Nor do I subject my self to further abuse and disrespect at the hands of SMOC's representatives. I ask that she call a cab for me, though I have not received my first pay and have no cash. The Program Coordinator makes no offer to help with transportation, even though it is late and after dark when the taxi arrives, and there is not even public transit available.

23) At the time of my arrival at Wright House, unfamiliar with the lexicon of the "recovery movement," I did not understand the term "sober house" to mean a resident population made up of predominantly of substance abusers. I interpreted it to mean "No drinking allowed on the premises." Rather, I was led to believe through a flier and in an interview, that Wright House was "a transitional program for homeless women." and that "the program was designed to assist *displaced* women in securing permanent housing." While it made mention of women with substance abuse problems, the words "sober house" were not used nor emphasized in the literature, nor were they used in the newspaper articles I later read about the Home. No indication was given in the interview that I, as someone who does not do drugs or abuse alcohol would be required to subordinate my own judgment about my health and well-being to the judgment of those still "in recovery," or that management would pander to the alcoholic population (seemingly because of their greater number) at the expense of the health and safety and of the residents who were not, to remain in the Wright House.

24) With regard to SMOC's offer of an apartment, as mentioned in SMOC'S letter of May 10, 2002: after I had been threatened, coerced, had the police called on me, been served by a sheriff and ejected from the residence into the night, Ms. Leoni again met with me to discuss SMOC's offer, (which *offer* never came up on the day of all the threats and intimidation), through a subsidy that is mandated for alcoholics in recovery. I feared first, I would find myself in a situation where I would be presumed to be--or treated like--an alcoholic or substance abuser by SMOC'S agents and handlers who might somehow, once again, find a way to "snatch the rug out from under me," and I would be suddenly without housing again. The offer was contingent upon my allowing Ms. Leoni, (who mentioned in our conversation, that she was a former corrections officer), to "check up on me." Since I am neither an alcoholic nor a criminal, and have never been, coupled with the experiences I had just undergone at the hands of the alcoholics and substance abusers in "recovery" at the Wright House, including the Director, I declined.

25) The actions of "trespassing" and threatening me with arrest if I did not leave constitute "threats, intimidation or coercion" under Massachusetts' Civil Rights Act, G.L. c. 12, &III, see generally Bally v. Northeastern University, 403 Mass. 713, 718-720 (1989). Violation of Article 11 of the Massachusetts Declaration of Rights in that I was not provide sufficient hearing to address the allegations, M.G.L. c. 12 section 11H and 11I. And DEPRIVATION OF CIVIL RIGHTS BY A PERSON ACTING UNDER COLOR OF STATE LAW IN VIOLATION OF TITLE 42, U.S.C. 198 Further, having suffered damages including, but not limited to severe emotional distress, embarrassment, harassment, loss of an opportunity at a *critical juncture* to address a debilitating health condition, I suffered and continue to suffer a subsequent decline in health, (because a postponement of treatment), and displacement.

WHEREFORE, I, Karen Unaka, as plaintiff in this matter, pray that the Court find that the defendants have violated my rights under the United States Constitution and the Massachusetts Declaration of Rights, award damages, plus costs and attorney fees, and the Court grant injunctive relief and any further or additional relief as it deems fair and just.

Signed_____
Karen Unaka
41 Valley Street
Dated: August 9, 2001                    Northampton, MA 01060

%JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Karen Unaka

### DEFENDANTS
South Middlesex Opportunity Council, Bruce S. Hulme, president and relevant party

(b) County of Residence of First Listed Plaintiff: **Hampshire**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **Middlesex**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Pro Se

Attorneys (If Known)
John H. Perten, Esq. & Marisa L. Pizzi, Esq.
Bowditch & Dewey, LLP 161 Worcester Road, Framingham, MA

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☒ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)
- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C., § 1983 and the United States Constitution

Brief description of cause:
Plaintiff alleges violation of her civil rights and right to due process

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE: 1/31/05
SIGNATURE OF ATTORNEY OF RECORD: John H. Perten

**FOR OFFICE USE ONLY**

RECEIPT #     AMOUNT     APPLYING IFP     JUDGE     MAG. JUDGE

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) __Karen Unaka v. South Middlesex Opportunity Counsel__

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

    - [x] I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.
    - [x] II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,   *Also complete AO 120 or AO 121
               740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.     for patent, trademark or copyright cases
    - [ ] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
               315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
               380, 385, 450, 891.
    - [ ] IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
               690, 810, 861-865, 870, 871, 875, 900.
    - [ ] V.   150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]   NO [x]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

   YES [ ]   NO [x]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]   NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]   NO [x]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [ ]   NO [x]

   A. If yes, in which division do all of the non-governmental parties reside?

      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

      Eastern Division [ ]    Central Division [ ]    Western Division [x]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]   NO [x]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  John H. Perten, Esq. & Marisa L. Pizzi, Esq.
ADDRESS  Bowditch & Dewey, LLP, 161 Worcester Road, Framingham, MA 01701
TELEPHONE NO.  (508) 879-5700

(Coversheetlocal.wpd - 10/17/02)